UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ADOLPHO RIVERA,                      :     CIVIL ACTION NO. 3:CV-13-0152
                                     :
            Petitioner               :     (Judge Nealon)
                                     :
      v.                             :
                                     :
MONICA RECKTENWALD,                  :     **FILED**
                                     :     **SCRANTON**
            Respondents              :     MAY – 9 2014
                                     :
            **MEMORANDUM**     PER————————
                                           DEPUTY CLERK

    Petitioner, Adolpho Rivera, a federal inmate currently confined in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania (FCI-Allenwood), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Rivera alleges in his petition that the Bureau of Prisons (BOP) has incorrectly computed his federal sentence. (Doc. 1, petition). The petition is ripe for disposition. For the reasons set forth below, the petition will be denied.

I.    **Background**

    On October 18, 1974, Rivera was arrested, and in 1975, he was found guilty in the United States District Court for the Southern District of New York of four counts of assaulting a federal officer with a dangerous weapon. (Doc. 9-1 at 11, Judgment and Commitment Order).

    On March 7, 1975, Rivera was sentenced to a 25-year prison term, with 10

years suspended, and a one-day probation term. Id.

On August 29, 1975, the district court modified the sentence to a ten-year term of imprisonment. (Doc. 9-1 at 13, Judgement and Commitment Order). A review of Rivera's original sentence computation prepared by the BOP indicates the ten-year term of imprisonment was computed to begin on August 29, 1975, the date of the resentencing. (Doc. 9-1 at 17, Sentence Computation Record). He was then credited with time spent in custody from October 18, 1974, the date of his arrest, through August 28, 1975, the day prior to his resentencing. Id.

On October 11, 1978, the United States Parole Commission paroled Rivera to New York State correctional authorities based on a New York State detainer for criminal sale of a controlled substance. (Doc. 9-1 at 15 Request for Parole Certificate). Rivera was paroled from his sentence by the U.S. Parole Commission, and was to remain under parole supervision until October 17, 1984. Id.

In 1979, Rivera was sentenced to one year to life in prison on the state drug charge. (Doc. 9-1 at 23, Request for Parole Violator Warrant). In 1980, his sentence on the state drug charge was reduced to one to three years in prison. Id. Rivera was thereafter released from state custody sometime prior to 1982. Id.

On December 6, 1982, Rivera was arrested for attempting to enter the American Airlines terminal at John F. Kennedy International Airport ("JFK Airport")

2

by pushing past a security officer. (Doc. 9-1 at 21, Warrant Application dated September 11, 1984). Arresting officers found cocaine and marijuana in Rivera's briefcase. Id.

On November 21, 1983, Rivera was convicted of criminal possession of a controlled substance in Queens County Supreme Court and sentenced to a term of eight years to life in prison. Id.

On September 21, 1983, before he was sentenced for the crimes he committed at JFK Airport, Rivera's car was cut off in a traffic accident. Id. See also (Doc. 9-1 at 24, Request for Parole Violator Warrant). He then impersonated a police officer, pulled out a police shield, walked over to the driver who cut him off, and shot him to death. Id. Rivera was arrested on September 30, 1983. Id. On January 10, 1984, Rivera was convicted of manslaughter in Kings County Supreme Court and sentenced to six to twelve years in prison. Id.

On September 11, 1984, prior to the expiration of his sentence, the Commission issued a parole violator warrant, charging Rivera with a violation of the conditions of his parole based on his two state court convictions in 1983 and 1984 for criminal possession of a controlled substance, and manslaughter. (Doc. 9-1 at 21-22, Warrant Application and Warrant).

On July 18, 2011, Rivera was released from his state sentence, the

Commission's warrant was executed, and Rivera was returned to federal custody. (Doc. 9-1 at 29, Warrant Return).

On January 26, 2012, the Commission conducted a prole revocation hearing for Rivera.  (Doc. 9-1 at 33, Notice of action).  Following the hearing, the Commission ordered Rivera's parole revoked and ordered that he receive no credit for street time spent on parole.  Id.  The Commission ordered that Rivera serve to the expiration of his sentence.  Id.

The computation of Rivera's sentence by the Bureau of Prisons (BOP) shows his projected satisfaction date as March 6, 2015.  (Doc. 9-1 at 45, Sentence Monitoring Computation Data).

On January 23, 2013, Rivera filed the instant petition for writ of habeas corpus in he claims that the Bureau of Prisons (BOP) has incorrectly computed his federal sentence  by not providing him credit for the periods of October 18, 1974 through October 11, 1978, and July 12, 2011 through July 18, 2011.  (Doc. 1, petition).  Specifically, he claims that he was in custody from the date of his arrest on October 18, 1974, through October 11, 1978, when he was released on parole.  Id.  As for the second period, he claims he was released from the custody of New York State on July 12, 2011, to the custody of the United States Marshal Service pursuant to the United States Parole Commission's detainer, not July 18, 2011, as documented

4

by the BOP.  Id.  He also claims that extra good time has not been applied to his

sentence computation.  Id.

## II.     Discussion

The Parole Commission is authorized by statute to determine whether the

sentence for a parolee convicted of a crime punishable by imprisonment while on

parole shall be served consecutively or concurrently with the sentence imposed on

the new offense.  See 18 U.S.C. § 4210(b)(2).  Under the Parole Commission's

interpretation of the statute, all time spent on parole is required to be forfeited if the

Commission revokes parole on the basis of a new conviction for a crime committed

while on parole and punishable by imprisonment.  See 28 C.F.R. § 2.52(c)(2)[1]; see

also D'Amato v. U.S. Parole Commission, 837 F.2d 72, 78 (2d Cir. 1988) (noting

that the Commission requires the forfeiture of time spent on parole by a parolee

convicted of a crime committed while on parole that is punishable by a term of

imprisonment); Heath v. U.S. Parole Commission, 788 F.2d 85, 91 (2d Cir. 1986)

(Commission is authorized to order the forfeiture of all the time remaining on a

---

[1]"It is the Commission's interpretation of 18 U.S.C. 34210(b)(2) that, if a
parolee has been convicted of a new offense committed subsequent to his release on
parole, which is punishable by any term of imprisonment, detention, or incarceration
in any penal facility, forfeiture of time from the date of such release to the date of
execution of the [parole revocation] warrant is an **automatic statutory penalty**, and
such time shall not be credited to the service of the sentence." 28 C.F.R. § 2.52(c)(2)
(emphasis added).

parolee's sentence on the date of parole from federal custody.).

As a result, the Commission revoked Rivera's parole at his January 26, 2012 hearing based on his 1983 and 1984 state court convictions, which were committed while he was on parole and were both punishable by imprisonment. Petitioner was required to forfeit all of the time spent in state custody between October 11, 1978 and July 18, 2011. See Weeks v. Quinlan, 838 F.2d 41, 42 (2d Cir. 1988) (affirming district court decision upholding Parole Commission determination that parolee convicted of a new offense punishable by imprisonment could not receive credit for time served in state prison).

According to Bureau of Prison's Program Statement 5880.30, Sentence Computation Manual, in calculating a parole violator term when the USPC revokes parole with no credit for street time/time spent on parole, the total time in effect remaining to serve is determined by calculating the number of days from October 12, 1978, the day after Rivera was paroled from his federal sentence, through October 17, 1984, his original full term expiration date as listed on his original sentence computation. See (Doc. 9-1 at 41, Independent Sentence Computation). For Rivera, that period equaled 2,198 days remaining to serve. Id.

Beginning with the date of Rivera's arrest on July 18, 2011, the Bureau of prisons took Rivera's 2,198 remaining days, credited him days per month of statutory

6

good time (SGT) he would earn, for a total of 722 days of SGT, and then credited

him thirty (30) days of extra good time (EGT), as recommended by institution staff,

arriving at a projected release date of March 6, 2015, via mandatory release. (See

Doc. 9-1, at 43-45, Sentence Monitoring Computation Data).

To the extent that Rivera seeks credit for the time he spent on parole after he

was released from federal custody on October 11, 1978, he has already been

provided credit for the period of October 18, 1974, the date of his arrest, through

October 11, 1978, the date he was paroled. See (Doc. 9-1 at 41, Independent

Sentence Computation). Additionally, to the extent that Rivera claims he should be

given six (6) more days of credit because he claims he was released from New York

State custody on July 12, 2011, as opposed to July 18, 2011, Rivera provides no

evidence of his date of release being anything other than what is evidenced by the

BOP records. Finally, with respect to Rivera's claim that he has not been provided

extra good time, BOP records clearly indicates that he has been awarded EGT. See

(Doc. 9-1 at 45, Sentence Monitoring Good Time Data).

Thus, based on the above, the petition for writ of habeas corpus will be

denied. A separate Order will be issued.

Dated: May 9, 2014

_____

**United States District Judge**

7